**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JIMMY FOSTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-0503-CVE-FHM |
| | ) | |
| ANITA TRAMMELL, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner, a state inmate represented by counsel. Respondent filed a response (Dkt. # 11) and provided the state court records (Dkt. ## 11, 12) necessary for adjudication of Petitioner's claims. Petitioner filed a reply to Respondent's response (Dkt. # 13). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### *BACKGROUND*

On Sunday, July 9, 2006, at about noon, sixteen-year-old Jimmy Foster (Petitioner) shot and killed Tyri Rodgers (Rodgers) at the Apache Manor Apartments located in Tulsa, Oklahoma. Several witnesses were at the scene in close proximity to the shooter. They saw Petitioner, walking alone on a sidewalk within the apartment complex holding a black, semi-automatic handgun. He held the gun straight out, with his arm fully extended. One witness saw Petitioner fire four shots. Another witness heard three shots, then saw Petitioner fire a fourth shot. A third witness heard three

---

[1] Petitioner is in custody at the Oklahoma State Penitentiary where Anita Trammell is the Warden. Under Rule 2(a), Rules Governing Section 2254 Cases, Anita Trammell, Warden, is the proper party respondent. Therefore, Anita Trammell, Warden, is hereby substituted in place of Jane Standifird, Warden. The Clerk of Court shall be directed to note the substitution on the record.

or four shots and identified Petitioner as the shooter. None of those witnesses saw Petitioner duck or otherwise take evasive action. None of the witnesses saw a gun in the possession of the shooting victim, Rodgers. After being shot, Rodgers was taken to St. John Hospital, where he died. Law enforcement authorities recovering evidence after the shooting found three .40 caliber cartridge casings and a 9 mm casing on the sidewalk where the shooting took place.

Based on those events, Petitioner was charged, by Information filed in Tulsa County District Court, Case No. CF-2006-3169, with First Degree Malice Aforethought Murder. During his jury trial, Petitioner testified in his own defense. He admitted shooting Rodgers with his .40 caliber handgun, but claimed he acted in self-defense. At the conclusion of the trial, held January 12-16 and 20-21, 2009, a jury found Petitioner guilty as charged. On March 31, 2009, the trial judge denied Petitioner's motion for a new trial and sentenced Petitioner in accordance with the jury's recommendation to life imprisonment. Petitioner was represented during trial by attorney Kevin D. Adams.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Wyndi Thomas Hobbs, Petitioner raised the following propositions of error:

> Proposition 1: There was insufficient evidence to convict Mr. Foster of Malice Aforethought First Degree Murder.
>
> Proposition 2: The evidence was insufficient to support First-Degree Murder because the State failed to prove Mr. Foster was not acting in self-defense.
>
> Proposition 3: The trial court committed reversible error when it failed to grant defense counsel's request to instruct the jury on defense of another.
>
> Proposition 4: The cumulative impact of errors deprived Mr. Foster a fair trial.

(Dkt. # 11-1). On May 17, 2010, in Case No. F-2009-306, the OCCA entered its unpublished summary opinion affirming the Judgment and Sentence of the district court. (Dkt. # 11-3).

2

Petitioner did not file a petition for writ of certiorari at the United States Supreme Court nor did he file an application for post-conviction relief in the state district court.

Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1) on August 15, 2011. He identifies the same four grounds of error raised on direct appeal. Id. In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief on grounds 1, 2, and 4 under 28 U.S.C. § 2254(d); and that ground 3 is a matter of state law and is not cognizable on habeas corpus review. (Dkt. # 11).

*ANALYSIS*

**A. Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented grounds 1-4 to the OCCA on direct appeal. Therefore, the Court finds Petitioner satisfied the exhaustion requirement before filing his habeas petition.

The Court further finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing. Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Here, Petitioner presented grounds 1-4 to the OCCA on direct appeal. Because the OCCA addressed Petitioner's claims on the merits, the Court will review these claims under the standards of § 2254(d).

4

**1. Sufficiency of the evidence supporting First Degree Murder (Grounds 1 and 2)**

As his first ground of error, Petitioner claims that the State presented insufficient evidence to support his conviction for First Degree Malice Aforethought Murder. (Dkt. # 1 at 4). In support of this claim, Petitioner states "[t]he facts at trial showed that Foster shot the decedent either through self-defense or defense of another. There was no evidence of actual malice." Id. As his second ground of error, asserts that the State failed to prove that he was not acting in self-defense. Id. at 6. He claims that "[d]ifferent shell casings were found at the scene which showed that the decedent fired at Foster first." Id. On direct appeal, the OCCA rejected these claims, finding as follows:

> In Propositions I and II, viewing the evidence in the case in the light most favorable to the State, we find it was sufficient to prove beyond a reasonable doubt that Appellant was guilty of first degree malice aforethought murder. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204. Appellant testified in his own defense and admitted to intentionally shooting Tyri Rodgers with a .40 caliber handgun but claimed that he acted in self-defense. By raising the defense of self defense appellant admitted the elements of the charge, but offered a legal justification for conduct which would otherwise be criminal. *West v. State*, 1990 OK CR 61, ¶ 6 798 P.2d 1083, 1085. Based upon the entire record, the jury could have rationally found beyond a reasonable doubt that Appellant did not act in self defense. *McKee v. State*, 1962 OK CR 57, ¶¶ 19-21, 372 P.2d 243, 245; OUJI-CR (2d) 8-46 (Supp.2009).

(Dkt. # 11-3 at 2).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of

5

law." Jackson, 443 U.S. at 319. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

In applying the Jackson standard, the Court looks to Oklahoma law to determine the substantive elements of the relevant criminal offense. Jackson, 443 U.S. at 324 n.16. Under Oklahoma law, no person may be convicted of murder in the first degree unless the State proves each of the following elements beyond a reasonable doubt: "first, the death of a human; second, the death was unlawful; third, the death was caused by the defendant; and fourth, the death was caused with malice aforethought." See Dkt. # 12-14, O.R. at 461. Where a defendant presents "evidence of self-defense, through his own or the State's witnesses; only then does the State have the burden to prove beyond a reasonable doubt that the defendant was not acting in self-defense." Dawkins v. State, 252 P.3d 214, 220 (Okla. Crim. App. 2011) (citation omitted).

In this habeas proceeding, Petitioner admits that "in a self-defense case, intent is pretty much a given, as it was here." (Dkt. # 13 at 2-3). He goes on to state that "[o]f course Foster intended to kill Rodgers because Rodgers posed an immediate, unjustifiable, threat of death to Foster." Id. at 3. Thus, Petitioner's challenge in Grounds 1 and 2 is to the sufficiency of the evidence supporting the unlawfulness of Rodgers' death. Petitioner claims that the State failed to prove that he did not act in self-defense. In both his supporting brief (Dkt. # 8) and his reply (Dkt. # 13), Petitioner claims that the OCCA's conclusion that the evidence was sufficient to support his conviction of first degree murder was predicated upon an unreasonable view of the facts. (Dkt. # 8 at 16; Dkt. # 13 at 2). The focus of Petitioner's argument is that the physical evidence recovered at the scene of the shooting, specifically a 9 mm casing, proves that Petitioner acted in self-defense. See, e.g., Dkt. # 8 at 17, 18.

6

Petitioner states that "because of the existence of the 9 mm shell casing, no rational juror could have found Foster guilty as charged." Id. at 21.

The Court disagrees with Petitioner's assessment of the evidence. Upon review of the record, the Court finds that the evidence, when viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt, including the unlawfulness of Rodgers' death. First, none of the eye witnesses saw anyone other than Petitioner shooting a gun when Rodgers was shot. (Dkt. # 12-8, Tr. Vol. III at 406, 450, 485, 508, 517, 530, 541). Of greater significance, and as argued by the prosecution during trial, Petitioner's own testimony defeats his claim of self-defense. Petitioner testified that, just prior to the shooting, he and his friend, Craig Carlis, left the apartment where he was staying to walk to a local store to buy "blunt wraps" to use for smoking weed. (Dkt. # 12-10, Tr. Vol V at 709-710). As he walked out of the apartment, he armed himself with his .40 caliber pistol. Id. at 710. Petitioner admitted that he had reloaded his .40 caliber handgun after the previous night's events[2] and took it with him Sunday morning before he ever saw "Smurf"[3] or "Deuce."[4] Id. at 730. Petitioner and Carlis walked down the sidewalk. Seconds after walking out of the door, Carlis "bumped" Petitioner to alert him to the presence of Smurf and Deuce. Id. at 711. Smurf and Deuce were walking towards Carlis and Petitioner. Id. at 713. Petitioner testified that they all stopped and looked at each other. Id. at 714. Both Carlis and Deuce took off running. Id. at 715. Both Smurf

---

[2]Petitioner testified that during the night preceding his shooting of Rodgers, he, his brother, and friends, were involved in a shoot-out with Jamarkao Jackson and his friends at Apache Manor. (Dkt. # 12-10, Tr. Vol. V at 698-705).

[3]Tyri Rodgers' street name was "Smurf."

[4]Jamarkao Jackson's street name was "Deuce."

7

and Petitioner "went for their pistols." In Petitioner's words, "I seen him pulling his gun. . . . He was getting ready to shoot. . . . He shoot, bam, and I shoot. . . . Right after he shot his pistol, I shot mine. . . Three times. . . . [I t]urned and ran off." Id. at 716-17.

Accepting that testimony as true, Petitioner has failed to show that the OCCA's adjudication of this claim resulted from an unreasonable application of the facts. Petitioner's jury received instructions on self-defense. In Instruction No. 31, Petitioner's jury was specifically instructed as follows:

> Self-defense is permitted a person solely because of necessity. Self-defense is not available to a person who was the aggressor, or provoked another with the intent to cause the altercation, or voluntarily entered into mutual combat, no matter how great the danger to personal security became during the altercation unless the right of self-defense is reestablished.

(Dkt. # 12-14, O.R. at 468). The OCCA has recognized that self-defense cannot be invoked by one who voluntarily enters into a difficulty armed with a deadly weapon, no matter how great his peril becomes. See Ruth v. State, 581 P.2d 919, 922 (Okla. Crim. App. 1978) (citing Price v. State, 541 P.2d 373 (1975); McDaniel v. State, 127 P. 358 (Okla. Crim. App. 1912)). "Self-defense is not available to a person who is the aggressor or who enters into mutual combat." West .v State, 798 P.2d 1083, 1085 (Okla. Crim. App. 1990) (citations omitted). Petitioner's testimony, as cited above, reflects that the encounter with Rodgers was the equivalent of voluntary mutual combat. Petitioner chose to arm himself with a deadly weapon, a .40 caliber handgun, before leaving his apartment. When he encountered Rodgers, he did not flee the scene but instead pulled his gun and exchanged gunfire with the victim at noon on a sidewalk crowded with bystanders. Therefore, the evidence, when viewed in a light most favorable to the prosecution, was sufficient for a reasonable jury to conclude that self-defense was not available to Petitioner. Petitioner has not shown that the OCCA's

8

conclusion, that "the jury could have rationally found beyond a reasonable doubt that Appellant did not act in self defense" (Dkt. # 11-3 at 2), was contrary to, or an unreasonable application of, Jackson. Petitioner's request for habeas corpus relief on Grounds 1 and 2 is denied.

### 2. Failure to instruct on defense of another (Ground 3)

In his third ground for relief, Petitioner contends that the trial court committed reversible error by failing to instruct the jury on his defense of defense of another. (Dkt. # 1 at 7). Petitioner explains that "defense counsel requested such an instruction in response to closing argument of the State. The defense theory of the case was thus not presented to the jury." Id. Rejecting the claim on direct appeal, the OCCA found that "the evidence did not warrant an instruction upon defense of another," and that "the trial court did not abuse its discretion in the instructions given to the jury. The instructions as a whole accurately stated the applicable law." (Dkt. # 11-3 at 2 (citations omitted)). Respondent responds that this issue involves a matter of state law and is not cognizable on habeas review. (Dkt. # 11).

It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial

9

than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Upon review of the record, the Court finds that Petitioner was not denied a fundamentally fair trial as a result of the trial court's refusal to issue the requested instruction. Although trial counsel had reviewed and approved of the jury instructions, including Instruction No. 31 cited above, he nonetheless argued that the prosecutor's mutual combat argument was unanticipated, and for that reason, he did not request the instruction on defense of another until after the prosecution's rebuttal closing argument. (Dkt. # 12-10, Tr. Vol. V at 814-15). During her rebuttal closing argument, the prosecutor reviewed Petitioner's testimony about being involved in a shootout with Deuce and others during the night preceding the fatal shooting of Rodgers and suggested that the shooting of Rodgers was a continuation of the previous night's altercation. Id. at 810. Petitioner's trial counsel argued that the prosecutor's reference to the preceding night's shootout, where Petitioner admitted he fired his .40 caliber handgun multiple times, but purportedly in defense of his brother and friend, warranted an instruction on defense of another as to the shooting of Rodgers. Id. at 814. The trial judge denied the request. Id. at 815. Petitioner filed a motion for new trial based on the trial judge's denial of his request to issue the instruction. (Dkt. # 12-14, O.R. at 486-93). On March 31, 2009, the trial judge denied the motion for new trial. (Dkt. # 12-11, Tr. Sent./Mot. New Trial at 17). As stated above, the OCCA found that the evidence presented at trial did not warrant issuance of an instruction on defense of another.

The Court agrees with the OCCA's finding that the evidence presented at trial did not warrant an instruction on defense of another. See Dkt. # 11-3 at 2. While Petitioner may have fired his gun in defense of his brother and friend on the night preceding the shooting of Rodgers, that

altercation merely set the stage for the events that transpired the next day when Rodgers was shot and killed. No evidence suggests that, on that day, Sunday, July 9, 2006, Petitioner fired shots in defense of anyone else. Petitioner's trial was not rendered fundamentally unfair by the trial court's refusal to instruct the jury on the defense of defense of another. Petitioner is not entitled to habeas corpus relief on Ground 3.

### 3. Cumulative error (Ground 4)

As his fourth ground of error, Petitioner argues that the combined effect of the errors in this case deprived him of a fair trial. (Dkt. # 1 at 9). On direct appeal, the OCCA cited Ashinsky v. State, 780 P.2d 201, 209 (Okla. Crim. App. 1989), and concluded that Petitioner "was not denied a fair trial by cumulative error." (Dkt. # 11-3 at 3).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, there is no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). For that reason, Petitioner's request for habeas corpus relief on Ground 4 shall be denied.

C.  **Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins, 374 F.3d at 937-38. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the **substitution** of Anita Trammell, Warden, in place of Jane Standifird, Warden, as party respondent.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3. A separate judgment shall be entered in this matter.

4. A certificate of appealability is **denied**.

**DATED** this 15th day of September, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE